All right, next case and last case of the morning is Free Speech Coalition v. Attorney General, numbers 18-3188 and 18-3189. May it please the Court, Anne Murphy for the Attorney General, and I'd like to ask for two minutes for rebuttal. That'll be granted. Your Honor, Congress in these statutes tried to achieve a somewhat modest and very important goal, which is making sure that when sexually explicit images show real people, that those people are at least 18 years old. Child pornography depicting people under 18 is illegal, and Congress determined after an expert commission made findings that the only actually effective way to make sure that the people were 18 was to have an age verification and record keeping system. After trial, the District Court found that the statutes are not overbroad on their face, because as the panel of this Court determined in affirming that judgment, the legitimate applications of the statutes vastly outweigh the possible applications where there may be constitutional problems. Let me take you, Ms. Murphy, right to what I think is, to me, perhaps the central question. We're here now because Reed v. Gilbert changed the lay of the land, right? Correct. Right, and nobody's disagreeing that at this juncture, we do have to apply strict scrutiny, right? Correct. Okay, so that being the case, that well-known test requires the government to use the least restrictive alternative. And we had, in our earlier iteration, I mean, we're back here at the Appeals Court for the fourth time, and the third time it was up here, we expressed doubt that the law as written, at least as to the age verification and the associated record keeping, that that was going to be able to pass strict scrutiny. We said that in that earlier opinion, didn't we? We did, Your Honor. Okay. Now, following up on that, or I can't remember whether it was at that time or whether it was later in front of the District Court, the government took the position that we ought to look at the statute and effectively limit it to images depicting young people under 30 years of age, right? Only as applied claims, yes, Your Honor. Okay. As soon as the government said that, wasn't the government acknowledging that, wait a second, there is a less restrictive means to accomplish this end? Your Honor, I want to make a really, really important point here about facial validity and as applied claims. And I think Your Honor's question goes right to it, if you'd just bear with me for one second. In Stevens, the Supreme Court, reviewing a decision from this court, and it was a strict scrutiny case, said, you know, under strict scrutiny, even if you're looking at this very narrow tailoring, under strict scrutiny, it remains the case that if you want to facially invalidate a statute, you nonetheless have to show substantial overbreadth. And this court, all of the decisions have come down since Stevens, and you will observe, has been extremely careful to separate out the facial validity, which is an overbreadth claim, from the individual claims that the statutes fail narrow tailoring. So given that background, I would like to address Your Honor's question, that this is a narrow tailoring claim with respect to these specific plaintiffs, that maybe with respect to some of them, looking at not clearly mature people would be enough. There are as applied claims here that we're dealing with, right? That's right. I agree with you, Your Honor. I'm just making clear that we're all on the same framework, because there's a lot of, in the briefing, a lot of smushing of things together. Okay. So at least as to the as applied claims, once the government says that, the government's acknowledging that there is a less restrictive alternative, right? Only for, well, not necessarily. It still depends on the, so... Help me out. If you say, hey, wait a second. Why don't you just read the statute so it only applies to depictions of people under 30 years of age? And we're good with that. Why isn't that, in fact, an acknowledgement that the government's purposes would be accomplished by a less restrictive... Because, Your Honor, I hoped I wasn't going to have to go here, but here I am. One of the plaintiffs, the works that they produce is a gallery of just people's genitals on the internet. And with respect to those particular images, I only put one in this joint appendix. It's at page JA378. But if you can imagine, like, many similar pictures, and there's other pictures that just show body parts. For example, one at 507. Anyway, to the extent that you don't see the parts of people's body that would normally tell you how old they are, we think with respect to those images, you probably do need age verification and record keeping. Then you've just said, hey, there's a category, there's another subcategory, but it doesn't officiate the government's earlier concession that, broadly speaking, an under 30 application would be enough. Except when we're only looking at the pubic area or something. Yes, so Your Honor, this court has always expressed difficulty with the application of the statutes to clearly mature people. And under intermediate scrutiny, it's certainly true that this court did make reference to the give and the as applied claims. I'd just like to say that one of the other things that this court did was to say, you know, all of the individual plaintiffs do produce images showing younger people, that the principal burden of the statutes, to the extent there is one, is in creating the record and indexing system. And that to the extent that clearly mature people also appear, it's just another dot, it's not a significant burden. So with strict scrutiny, you know, obviously if Your Honors view this as not strict based on the percentages of the images, and the percentages are at 787F158 of this court's previous opinion, then obviously it would be perhaps something to say that the statutes are invalid with respect to the depictions of clearly mature people. But I would like to add that even the images that show clearly mature people very often show younger people as well. And I really do want to commend to Your Honors the joint appendix, because I think it's really important to know exactly what we're talking about in this case, and as to why the statutes are so important. Well, there's, I don't think anybody's going to disagree for one moment, Ms. Murphy, that this is a very important government interest, a government interest of the highest import. And it certainly doesn't, it doesn't mean, because we're in the position of having to ask these questions that we don't recognize and appreciate that. We're operating under the strictures of Supreme Court authority that require certain tests. And so, you know, at least as to the as-applied challenges, based on concessions made by the government, and given the Supreme Court's own test, I'm not sure how at least as to the as-applied challenges, you can ask us to say that this is narrowly tailored. That this is the least restrictive alternative. I take it that you're almost conceding at the podium. Yeah, that's a tough sell, right? Your Honor, I'm not authorized to make any concessions. Your Honors need to apply strict scrutiny. We would just ask you to sustain the facial validity of the statute, and also to consider, if Your Honors find constitutionally troubling the depictions of clearly mature people, to only invalidate those applications of the statutes, and not to invalidate the statutes to the plaintiffs in their entirety. Because all of them do, there's evidence in the record that every single one of them does use young-looking models, young-looking performers. Can I ask you a question? I understand, we obviously read your briefs very closely. I was a little bit confused on how, what's the utility of the labeling exactly? Why is that important? So the purpose of the labeling, Your Honor, is that if, you know, once the images are in circulation, either in like a book or magazine or on the World Wide Web, if somebody's looking at an image and wonders whether the person is 18 or not, that you can actually, from that page of the web, there's like a link that you can mouse over and the information will pop up, and so you know where the age verification records are. So that's, otherwise you could be, otherwise you could never, it's not clear that you would know where the, how to find the records. So that's for, I guess, an end user who's concerned. Correct. Or for law enforcement. Well, it seems to me if law enforcement could just go to wherever the, you know, the producer is, right? Well, it depends, Your Honor. I mean, a lot of, for example, one of the things that the producers do is that they use a third party custodian for the records. The records are kept separately, and that way the law enforcement has no reason to ever go to the actual producer. You just go to where the records are. Before your time runs out, could you touch on the issue of the nationwide injunction? Yes, Your Honor. The district court here correctly affirmed the facial validity of the statutes. It held that the plaintiffs had succeeded in part on their as-applied claims, and as, you know, we disagree with the court's rationale for that. But just on the basis of those ten plaintiffs' claims, it enjoined the statutes nationwide against all producers, and we think it's clearly incorrect that the remedial authority of the court did not extend to people who are not, producers not parties before the court. And your argument is that these ten plaintiffs are actually, as you say, niche players? Correct. I mean, the record is very clear on that, and the district court found that. And again, your joint appendix will be a handy guide. Yes, I picked J278-362. That's one of the plaintiff's images, very artistic images. And then from J497, 507, 514, more like ordinary commercial pornography. And the record before the district court was that the commercial pornographers seek out younger-looking people, and that the individual plaintiffs, their artists, their sex educators, their, you know, the evidence was that they do not look to portray young people. And in fact, one of the plaintiffs said that he'd been recently taking sexually explicit images of disabled people and older people, which says something right there. And the district court expressly found that they were niche players, and they are. They're not huge commercial producers of barely legal porn. Thank you, counsel. Good morning. May it please the court, my name is Michael Murray, and I represent the Appellees and Cross Appellants in this case. Let me turn right to the issue of the least restrictive means part of the strict scrutiny test. It's beyond debate that under strict scrutiny, the government had the burden of proving by evidence that the various less restrictive means proposed by the plaintiffs would in fact be ineffective. We submit the government failed to meet that burden. It's important, we think, to emphasize that the statutes cover the entire universe of sexual images. And that's important because it reads whoever produces any sexual explicit image has to comply with all the burdens. If we accepted that, that the as-applied challenges had a problem, talk to us, yeah, talk to us about the overbreadth, the facial challenge. You've got the burden of proof on that one, right? Yes, but keep in mind, you know, there's this fine line between as-applied and facial. And we at all stages pled in our complaint and argued all throughout that all of our claims, that our claims under strict scrutiny were content-based and that it failed strict scrutiny on its face and as-applied. You made the overbreadth challenge. Yes, no, I understand that. Okay, so you made the challenge. And on the overbreadth challenge, you bear the burden of proof, right? Yes. Okay. Given that, and given that the district court found, quote, that youthful-looking performers are ubiquitous in the adult entertainment industry against all pornography genres, that every plaintiff producer who testified admitted he or she has used models ages 18 to 24 years old, that the general age range of confusion is 15 to 24 years old. Given this kind of record evidence that was developed and that the district court pointed to specifically, and that the burden is on you to demonstrate that this is clearly out of line or overbroad, how do you win that? Okay. Several ways. Number one, we prove there's an enormous quantity of images on the Internet and in the marketplace of persons who could not be mistaken for minors that are clearly mature adults. There is a quantity of those. Yes, there is. But your colleague just a moment ago at the podium pointed out that close to 35% of all the pages on all pornographic sites contain words that show that it's aimed at young adults, young people, people who could perhaps not be adults, children. Doc, they're experts, Doc. Assume for the sake of discussion we're talking about that many. On an overbreadth analysis, how is that not enough for the government to say, we've identified a problem and we've identified facts to show it's a real problem? How is that facially invalid? Well, because as Dr. Dines, who testified to that fact on cross-examination, she basically admitted that only one-third of the material on the Internet is of sexually explicit images as to which one could be confused as to whether or not the person depicted is or is not a minor. In other words, two-thirds of the material depict persons who are obviously adults. That's a huge quantity of material that is not affected in terms of furthering a governmental interest by burdening all of that expression. Our plaintiffs, for example, and the court recognized that our plaintiffs, all of them, have substantial quantities of materials involving people over 30 and much higher quantities of people over 25, which this court said demonstrate, and I'm quoting, that the number of performers to whom the statutes apply, yet for whom requiring ID does not protect children, there's a significant quantity of that. So that's one. We have several areas of overbreadth. So we start with the clearly mature adults. Back it up a second. Okay. of a factual foundation to show, given the importance of the government's interests and the seriousness and amount of the problem, that's still not enough. You're saying as a matter of law that's not enough. No, no. What I'm saying is that that's one factor. I'm going to tell you the other areas of overbreadth. One area of overbreadth, as this court found, is its application to images of clearly mature adults. A second area of unconstitutional overbreadth is the substantial body of noncommercial private expression that this record showed existed and that this court said could not constitutionally be used and could not constitutionally be applied under this statute. I'm sorry to back up again, but it sounds to me like you're making the very same arguments about least restrictive alternative and overbreadth. Is there no logical distinction between the two? Well, there is a logical distinction, but there's a lot of overlap as well. There's a lot of overlap, but help me understand. It's true that on the least restrictive alternative, and we said as much in an earlier opinion, we wonder if you could pass strict scrutiny because of the number of images that is being captured of people who are clearly mature, not minors. But when you're in the overbreadth arena and the burden is on you, not on the government, is there, is it not possible at one and the same time for the government to fail to prove least restrictive alternative and for you to fail when the burden is on you overbreadth? I think it's possible, yes. But what I'm saying is we have. Help me then understand. How's that space work? Well, my position is that we showed a lot of areas of overbreadth that are sufficient to meet the test that the overbreadth is substantial. We begin with there is a quantity of clearly mature adults, which is one area of overbreadth. We next come to the question of there is a substantial body of noncommercial private expression, which we proved. We put the evidence on of that. And for example, and this court credited that and acknowledged that Dr. Gruen's testimony would yield the conclusion that there are millions of Americans who post sexually explicit material through their cell phones in what's called sexting that would be required to comply with this law. And that would be an unconstitutional application of this law. As a matter of fact, and you're right, it goes right back to least restrictive as well, because the government argued on the first appeal that it wanted this court to construe the statute as limited to materials for sale or trade as a means of saving its constitutionality. And this court said we can't rewrite the statute. And so there's again a situation where they've admitted effectively that limiting the statute to commercial productions would be a less restrictive means. Is your burden to show that the invalid applications substantially outweigh the statute's legitimate applications? Is that the burden? I think you have to show that it's substantial overbreadth. There's very, it doesn't come down to a mathematical. It's pretty clear on this, isn't it? It doesn't come down to a mathematical test, however. But yes, we have to show that there is a substantial area of application. Not just that it's overbreadth, but that the invalid applications substantially outweigh the legitimate applications. Is that a correct statement of the standard? That is a standard that you can find in Supreme Court cases. Okay. And I'm trying to... So you're making a lot of points that sound like, hey, they haven't shown a least restrictive alternative, which may work great for you when it comes to the as-applied challenge that the government has mounted. But I'm still struggling with how you're making your case with respect to overbreadth when the government has got evidence that there are tens of millions of these images out there of people who the government rightly can say, these could be minors, and we're trying to reach this. So as a facial matter, how do you get past, how can you say that you've shown that the illegitimate applications substantially outweigh the legitimate applications? By explaining what the illegitimate applications are and pointing out how extensive and substantial they are in comparison with what the government claims is appropriate, namely the use of youthful-looking performers in sexually explicit material. And even if all they've shown is that there are tens of millions of those images, but there's 40 million images of obviously mature adults, it can't be the case that... Sounds like you're saying there is a mathematical test. A minute ago you said there's no mathematical test. Is that how you're trying to tell me there is? Well, because, Your Honor, you suggested that just by showing tens of millions, that ends the inquiry. And I'm saying it doesn't end the inquiry. It probably doesn't. But what it does do is say there's clearly a very substantial government interest here. And now when the burden is flipped and the burden is on you and not on the government, you have to carry the burden to show that all of this reaching into mature depictions substantially outweighs those legitimate protections. But I think I got your argument on it. How do you have standing as trade association plaintiffs? I mean, I recognize you're here for all the plaintiffs, right? Yes. But just looking at the standing for the associational plaintiffs, how do they have standing with respect to the as-applied challenge? Because they, and we had testimony from Jeff Douglas, who was, the court found a very credible witness, explained who the members of the Free Speech Coalition are and exactly what they do in every aspect of adult entertainment and how they are burdened by these statutory requirements and how they were subjected to inspections. And the challenge under strict scrutiny doesn't depend on the particular facts as to any particular member of the Free Speech Coalition so long as all of the members are burdened by the statute because they disseminate sexually explicit material that requires them to keep the records. And if the statute fails strict scrutiny... I thought when it came to narrow tailoring, it did start getting fact-specific. It did start getting member-specific, no? It did because when we went to trial, we were under intermediate scrutiny. And so we put all that evidence in. Is that any less the case when you're under strict scrutiny? Because you're still dealing with tailoring and that tailoring has to do with individual action, right? The least restrictive means, though, is not necessarily dependent on the particular facts of any particular plaintiff because if the statute fails the least restrictive means test, it's unconstitutional, period. The Supreme Court has always said if you take a content-based statute and it flunks strict scrutiny on any of the parts of strict scrutiny, for example, the least restrictive means test, the statute is unconstitutional in its entirety. That's what happened in Playboy Enterprises. The Supreme Court specifically said once the government failed to prove that the plausible, reasonable alternative that had been proposed by Playboy, once the government didn't refute that, it was over. And the statute had to be struck in its entirety. And, in fact, the Supreme Court criticized the district court for going further and fashioning a remedy that actually would have required Playboy to send notices to its customers. And the court said, no, what it should have done is just struck the statute and enjoined it. And that doesn't depend upon... And so, Your Honor, when a statute flunks strict scrutiny, Alvarez, you know, he lied in front of a governmental board about getting the Congressional Medal of Honor. The Supreme Court struck it down in its entirety as unconstitutional. Entertainment merchants. The Supreme Court struck it down in its entirety because it flunked strict scrutiny. The same was true in Reed v. Town & Gilbert itself. Once strict scrutiny was not satisfied, the whole ordinance was struck, not just its application to the pastor in his church. So you don't need the individual members. You know, Free Speech Coalition was a party versus Ashcroft, where the Supreme Court struck down the virtual child pornography statute at the behest of Free Speech Coalition. Entertainment merchants was a trade association. So is there no difference between facial challenges and as-applied challenges? Well, the Supreme Court has said time and time again that it's hard to tell the difference. That's what they said in the whole women's health case. Because it sounds like that's what you're saying. It sounds like what you're saying is there really is no difference between a facial and an as-applied. And particularly under strict scrutiny. So as a legal position, what you're telling us is there really is no difference. When you have a statute like this that fails strict scrutiny because its language cannot be interpreted or construed narrowly, then there's really no difference. It flunks the test, and therefore it's unconstitutional. I mean, the most recent case was the Trademark case. That's okay. You don't have to get into Bianca versus Bernetti. Why don't you take just a moment to answer the question about a nationwide injunction. Answer the government's position that the district court here just went overboard. This was relief that wasn't necessary to invoke and was abuse of discretion. Because the district court was well within its discretion under whole women's health and under Citizens United. The Supreme Court again has said, citing that Fallon article. Well, the problem is, as the government points out, I mean, you have ten plaintiffs here, and I guess according to the government, these ten particular plaintiffs will hold up enforcement of the statute across the country. Does that really make sense? But that's what happens when a statute flunks. Well, they're also saying your ten plaintiffs are also quote-unquote niche plaintiffs as well. We argued in the district court when we went to trial, and they were trying to suggest that, oh, we show younger people as well. But we had the Free Speech Coalition. By the way, Marie Levine is a plaintiff, and she's Nina Hartley. She's one of the most famous adult film actresses ever who testified about the adult film industry and her role in it. She made more adult films beginning in the early 80s all the way up until currently when she's in her 50s. She was a great representative of the adult film industry. They subpoenaed the records from Vivid Video, which was one of the largest adult film producers in the country, as evidence, and it was put into the case. And even Vivid, a major film distributor, had some 60% of its performers were over the age of 25. So the adult film industry was very well represented in this case. Answer, if you would, the arguments that the government is making. And it's got support in Supreme Court case law that a broad so-called nationwide injunction, some people call it a universal injunction, that this cuts off the opportunity for the development of the law in a way that assists the Supreme Court in assessing constitutional questions. And therefore, it is wrong to do. It's wrong to say, because I, District Judge A, on this case, think this is unconstitutional. Therefore, the whole world will think it's unconstitutional because I'm cutting it all off. That's just an abuse of discretion. Well, except that, as I said, the whole women's health case, I think, is a good example. Yeah, you can certainly find cases where the court has said this should apply everywhere. But that doesn't answer the argument that we're taking, the government is making, which is this is something that you can and should be argued about in other courtrooms, and it's not right for one district court judge to decide this for the whole of the United States of America. Except that when you're dealing with strict scrutiny under a content-based statute, and if the reason that the statute flunked strict scrutiny would apply no matter who's challenging the law. For example, if the statute is struck down because... But there was a full record made by both sides. This was not a dilute record. This was an eight-day bench trial with all kinds of experts and plaintiffs. And as I said, whenever the Supreme Court says that a law flunked strict scrutiny, I can't find a single one. The only one that even bears on it, it was the Brockett versus Spokane arcades, which partially invalidated a Washington obscenity law, but for obvious reasons, because it only depended on the one word of lust. But every other case that you read, Alvarez, Entertainment Merchants, Simon & Schuster, Brown and Town of Gilbert, you can't... Playboy Enterprises, where the Supreme Court has held that a law flunked strict scrutiny, but didn't simply strike it down in its entirety. And so I think if the law flunked strict scrutiny, it's not really a factual matter anymore. It's that Congress had to write a narrower law. I got you. But the fact that the Supreme Court does it is materially different than a district court judge imposing a national injunction, right? When the Supreme Court says, we're declaring this, they're declaring it by definition for the whole country. No, no, no. Because when you read Ho Women's, what happened was the district court issued a nationwide injunction. The Court of Appeals reversed, and the Supreme Court basically said, no, the district court was right, because it was well within its discretion to issue the nationwide injunction once a determination was made that the statute was unconstitutional under the appropriate constitutional test. So it wasn't just the Supreme Court saying that only it could do it. It affirmed the power of a district court on a proper case. If the statute in our situation flunked strict scrutiny, the remedy is to just strike it down in its entirety. All right. Thank you, counsel. Thank you so much, Your Honor. Your Honor, on the striking down or just because it fails strict scrutiny, it's the category error. As Stevens recognized, there's a difference between statutes that are unlawful in every single application because of the reason they've been invalidated. And all of these cases, Ho Women's Health and Alvarez and Playboy, they all involve the type of constitutional failing that affects every application. Stevens stands with the proposition that provided there are constitutional applications of the statute, then facial invalidity in the First Amendment is a question of over breadth. And on the over breadth, as the district court correctly recognized, nothing had changed on that claim because of the application of strict scrutiny to the as applied claims. And this court in the previous decision went very carefully through the factual findings of the district court, the same one that are relevant here. It concluded that the invalid applications of the statute were pale in comparison to the legitimate applications. That's a seven, eight, seven, a third one. Sixty four. Is there a difference between between facial and as applied law here? And when it comes to the standing issue, I mean, you've you've taken the position that the associational claims don't have standing. You've heard what was just said by Mr. Murray. What's your response? So we they don't have standing for the as applied claims because each of their members is different. But that's what I'm trying to get. Yeah. But for the facial over breadth claim, they probably do have standing. If I if I switch that, I'm sorry. I meant to ask about that. You've taken the position that they don't have it as they as applied. And you've heard what he said, which is there's effectively no difference here between the facial and as applied challenges. What's what's your response to that? That's that's we can't really make a distinction here. But that's not correct. Because this is this is what the distinction is, that this statute has many, many clearly constitutional applications. And so when it comes to the narrow tailoring, you're looking at each producer's output of works as to whether the statutes are narrowly tailored as to that producer. And this court has made that extremely clear in both of its previous opinions. Let me back up real quick. Sure. Here's what I understand Mr. Murray to be saying on the as applied challenges. Since this fails least restrictive, if you accept the district court's holding, I know the government doesn't. But for sake of discussion, you accept the district court's holding that there were less restrictive alternatives that that holding is not dependent on what any individual person would do. It's a statement about the law itself. That's what I understand his argument to be. How is he wrong if he's wrong? Well, if he's not wrong, then is he right? There really is no difference. But if he is wrong, how is he wrong and how are we to make the distinction? Are you following what I'm trying to get at? And he's wrong because let's say that I'm a huge producer of barely legal pornography. And every single person that I show in all of my images is one of those people who could be, you know, in the realm of possible, possible not. I don't think that there's any doubt that the statutes are narrowly tailored under strict scrutiny to my claim because every single image I show is subject to the statutes. So now that's what takes us out of the Playboy realm and into the Stevens realm because we've shown legitimate applications. That's the government's burden. And under strict scrutiny, obviously, it's a significant burden. But then, you know, then you have to say, is it facially overbroad? This court has affirmed the district court's finding that it wasn't. It's really the same this time. But then with respect to the individual plaintiffs, again, we are subject to strict scrutiny on those individual claims. But Free Speech Coalition, again, since they are individual to each plaintiff's production, does not have standing to raise the claims of its members. OK, thank you, counsel. We'll take this case under advisement. Thank counsel for their excellent arguments in briefing on this case. We'd also ask that the parties split the cost of a transcript in this case. We'd like to review this later. And we'd also like to meet you at sidebar to thank you and congratulate you if you're amenable. And I'd ask the clerk to adjourn court.